**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Staren, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Clarivate Analytics (US), LLC, a Delaware limited liability company,<br><br>Defendant. | No. CV-23-02091-PHX-DWL<br><br>**ORDER** |

Anthony Staren ("Plaintiff") contends that his former employer, Clarivate Analytics ("Defendant"), failed to pay him over $500,000 in sales commissions to which he was entitled under Defendant's "2022 Sales Incentive Plan" (hereinafter, the "Incentive Plan"). In this action, Plaintiff asserts claims under the Arizona Wage Act ("AWA") and the covenant of good faith and fair dealing and also seeks declaratory relief concerning the validity of certain provisions in the Incentive Plan. (Doc. 14.) Now pending before the Court are Plaintiff's motion for judgment on the pleadings as to his claim for declaratory relief and Defendant's cross-motion for judgment on the pleadings as to all of Plaintiff's claims. (Docs. 26, 31.) For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted in part and denied in part.

**BACKGROUND**

The following facts are derived from the parties' operative pleadings, the complaint (Doc. 14) and the answer (Doc. 18). For purposes of Plaintiff's motion, the denials and affirmative allegations contained in Defendant's answer are presumed true. For purposes

of Defendant's cross-motion, the allegations contained in the complaint are presumed true.

I.      Factual Allegations

Plaintiff was employed by Defendant from December 2021 through June 2023. (Doc. 14 ¶ 7). During his employment, Plaintiff "participated in Clarivate's 2022 Sales Incentive Plan." (*Id.* ¶ 8). "The Incentive Plan provides that commissions are deemed fully earned and payable to a participant upon closure or invoicing of eligible sales during the employee's term of employment." (*Id.* ¶ 9.)

Plaintiff alleges that "[i]n 2022 he began working on a sale with Diaceutics, Inc," and "[t]hroughout 2022, [he] was personally involved in all aspects of the Diaceutics sales and regularly exchanged emails and phone calls with various members of Diaceutics, as well as other Clarivate employees to ensure that the sale could and would go through." (*Id.* ¶¶ 11-12.) Plaintiff also alleges that "[a]t the end of 2022, [he] successfully negotiated and closed the Diaceutics deal, which totaled $3.777 million." (*Id.* ¶ 13.) Defendant denies these allegations regarding Plaintiff's involvement in closing the Diaceutics sale. (Doc. 18 ¶¶ 11-13.)

On December 30, 2022, after Plaintiff allegedly closed the Diaceutics deal, Defendant published an internal report entitled "Daily Close Performance and Deals" that contained a section entitled "Top Business Deals From the Previous Business Day." (Doc. 14 ¶ 14-15.) It contained the following entry:



| | Account | Rep | Type | Business | Amount |
|---|---|---|---|---|---|
| 01 | Diaceutics Inc | Anthony Staren | New Business | LSHC | 3.777 |

Top business deals from the previous business day($M)

(*Id.* ¶ 16). According to Plaintiff, this entry states that he "closed the Diaceutics . . . sale for $3.777 million." (*Id.*) Defendant admits the existence of this entry but alleges in its answer that the entry was "auto-generated by a software platform based upon unverified self-report data entered by sales and other non-management employees prior to review and approval by Company management. Defendant denies any implication that the auto-

generated information reflects evidence that Plaintiff was the 'Rep' responsible for the Diaceutics Inc. sale." (Doc. 18 ¶ 16.)

On January 19, 2023, Plaintiff was invited to Defendant's April 2023 "Winner's Circle" trip, which was a five-night company-paid trip to Hawaii. (Doc. 14 ¶ 17; Doc. 18 ¶ 17.) Plaintiff additionally alleges that this trip was given as a "reward . . . for those commissioned employees, like [him], whose revenue for sales beyond the necessary target amount qualified them for the trip" and that he "would not have qualified for the trip without the Diaceutics sale." (Doc. 14 ¶¶ 17-18.) Defendant denies these additional allegations. (Doc. 18 ¶¶ 17-18.)

On January 31, 2023, Plaintiff had a phone call with Darren Tickle, a Clarivate executive, regarding the Diaceutics sale. (Doc. 14 ¶ 20). Following this call, Plaintiff emailed Tickle to express his belief that he was entitled to a $528,944.95 commission arising from the Diaceutics sale according to the terms of the Incentive Plan. (*Id.* ¶ 21.) In response, Tickle stated that "the Diaceutics sale constituted a 'Real World Data partner deal' that did not qualify as part of Mr. Staren's 2022 territory and that 'given the misalignment of the deal to [his] Incentive Plan and the exceptional nature of the deal, any compensation for this deal is within the sole discretion of Clarivate Management.'" (*Id.* ¶ 22.) Plaintiff alleges, and Defendant admits, that the phrase "Real World" does not appear in the Incentive Plan attached to the complaint. (*Id.* ¶ 23; Doc. 18 ¶ 23.) Plaintiff alleges that Defendant's regular practice is to quickly identify a deal as a "Real World Data partner deal" and interject before the employee closes the deal, but in this case, management "knew of and supported his efforts in the Diaceutics deal" and never questioned whether it would qualify as an eligible sale. (Doc. 14 ¶¶ 24-26.) Defendant denies these allegations. (Doc. 18 ¶¶ 24-26.)

Plaintiff alleges that, in refusing to pay him the commission, Defendant "relied on various provisions in the Incentive . . . Plan that purport to give [Defendant] unilateral and complete discretionary authority to reduce, even retroactively without warning, any sale that [Defendant] chose to reduce." (Doc. 14 ¶ 27.) Defendant "denies that said allegations

are a complete and accurate summary of the contents and/or relevant provisions of the [Incentive Plan] or the parties' relevant communications on this topic, and Defendant denies that Plaintiff is entitled to any additional unpaid compensation under the Plan." (Doc. 18 ¶ 27.) The complained-of provisions are as follows:

> **Achievement above Target.** The core Clarivate Sales Incentive Plan is an uncapped Plan that aims to provide exceptional rewards for exceptional performance. The plan components may generate unlimited commission earnings in-line with target achievement %. However, there may be rare scenarios where achievement is misaligned to the target that was set for a territory. In such cases, Clarivate Management reserves the right to review whether the target, territory size, pay-out rate and bonus objectives were appropriately set, and, where applicable, adjust the levels and/or associated commission earnings.

(Doc. 1-3 at 19.)[1]

> **Exceptional Orders** . Exceptionally large single orders that create payouts greater than 50% of a Plan component OTC in any one pay period may be rewarded as an exceptional commission payment outside the normal commission plan calculation, as determined in Clarivate Management's sole discretion to recognize the effort and deal size. Additionally, Clarivate Management reserves the right, in its sole discretion, to designate any account or sales opportunity as a "Redlined Account" at any point during the Plan Period, to which a Participant's normal incentive compensation terms will not apply. This may be done, for example, in the event of a merger or acquisition, in the event of exceptional contractual/ payment terms, or in the case of any unexpectedly large sales opportunity. The Company will notify the Participant either in advance or retroactively, if a given account or sales opportunity is designated as a Redline Account. Incentive compensation payments, if any, on Redline Accounts are purely discretionary within Clarivate, and will be determined by Clarivate Management, in its sole discretion.

---

[1] The "Achievement above Target" section also contains a second paragraph that provides as follows: "For Sales Commission or Sales Bonus earnings generated from outside of the core Clarivate Sales Incentive Plan components (including but not limited to Sales Accelerators, SPIFFs, and Special Sales Commission/ Sales Bonus programs), a maximum of 25% of annual OTC can be earned in total, unless explicitly approved by Clarivate Management." (Doc. 1-3 at 19.) That paragraph is not at issue here and Plaintiff does not include it in the portion of the complaint setting forth the "Achievement above Target" section. (Doc. 14 ¶ 28.)

(*Id.* at 20.)

Despite the disagreement about whether Plaintiff was owed any additional compensation, Defendant offered Plaintiff $15,000, which Plaintiff refused.  (Doc. 14 ¶ 30; Doc. 18 ¶ 30.)

II.     Procedural Background

On September 12, 2023, Plaintiff filed a complaint against Defendant in Maricopa County Superior Court.  (Docs. 1-3.)

On October 5, 2023, Defendant removed the action to this Court.  (Doc. 1.)

On November 6, 2023, after some wrangling over sealing, Plaintiff filed a redacted version of the complaint on the public docket.  (Doc. 14.)

On December 8, 2023, Defendant filed an answer.  (Doc. 18.)

On June 7, 2024, Plaintiff filed the pending motion for partial judgment on the pleadings.  (Doc. 26.)

On July 19, 2024, Defendant filed a response to Plaintiff's motion and a cross-motion for judgment on the pleadings.  (Doc. 31.)

On July 31, 2024, Plaintiff filed a combined reply to Defendant's response and response to Defendant's cross-motion.  (Doc. 32.)

On August 14, 2024, Defendant filed a reply to Plaintiff's response.  (Doc. 35.)

On December 19, 2024, the Court issued a tentative ruling.  (Doc. 45.)

On January 6, 2025, the parties stipulated to vacate oral argument and submit on the tentative ruling.  (Doc. 46.)

**DISCUSSION**

I.     Legal Standard

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the Complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

Meanwhile, Federal Rule of Civil Procedure 12(c) provides that after the pleadings are closed, any party may move for judgment on the pleadings. A Rule 12(c) motion for judgment on the pleadings by a defendant is "functionally identical" to a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (citations omitted). *See also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) ("*Iqbal* applies to Rule 12(c) motions.") (citation omitted). Therefore, a motion for judgment on the pleadings "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cnty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). *See also Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004) (when ruling on a Rule 12(c) motion, the court must "accept as true all allegations in [the plaintiff's] complaint and treat as false those allegations in the answer that contradict [the plaintiff's] allegations"). *See generally* 1 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 12 (2024) ("For the court to grant judgment on the pleadings for the plaintiff, the pleadings must show, even when construed in the light most favorable to the defendant, that the plaintiff must prevail as a matter of law. This is often a difficult burden since the plaintiff typically will hold the burden of proof for the claims it is asserting. For the plaintiff to prevail on a Rule 12(c) motion, the pleadings must conclusively establish all elements for which the plaintiff holds the burden and that

no defense is possible."). Ordinarily, if a district court considers evidence outside the pleadings in ruling on a motion to dismiss or motion for judgment on the pleadings, it must convert the motion into a motion for summary judgment and give the nonmovant an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A district court may, however, consider "[c]ertain written instruments attached to pleadings" in ruling on such a motion. *Id.* at 908.

II.   Analysis

Before turning to the parties' specific arguments, it is helpful to provide a summary of the essential claims and theories in this action. Plaintiff contends that, under the Incentive Plan, he was entitled to a $528,944.95 commission for closing the Diaceutics deal. Defendant, in turn, has provided three reasons why Plaintiff is not entitled to that commission under the Incentive Plan: (1) the Incentive Plan only provides for commissions for "eligible sales" and the Diaceutics deal was not an eligible sale because it constituted a "Real World Data partner deal" that did not qualify as part of Plaintiff's territory; (2) alternatively, Defendant had discretion under the "Achievement above Target" section of the Incentive Plan to reduce or eliminate commissions in "rare scenarios where achievement was misaligned to the target that was set for a territory" and chose to exercise that discretion in the case of the Diaceutics deal; and (3) further alternatively, Defendant had discretion under the "Exceptional Orders" section of the Incentive Plan to deviate from "the normal commission plan calculation" in cases of "[e]xceptionally large single orders that create payouts greater than 50% of a Plan component OTC in any one pay period" and/or "for example, in the event of a merger or acquisition, in the event of exceptional contractual / payment terms, or in the case of any unexpectedly large sales opportunity" and chose to exercise that discretion in the case of the Diaceutics deal.

A.   **Count Three**

These details provide the backdrop for Count Three of the complaint, in which Plaintiff seeks "a judicial declaration that [Defendant's] contractual provisions which authorize it to unilaterally reduce and/or revoke [Plaintiff's] commissions are illusory and

void." (Doc. 14 ¶ 53.) Both sides now move for the entry of judgment on the pleadings in their favor on that claim. Plaintiff's position is that the challenged provisions give Defendant "the sole discretion and authority to adjust commission levels and 'zero out' an employee's commission for any reason and at any time Defendant chooses. This unfettered discretion renders the commission component of Plaintiff's employment illusory and is so one-sided that it is substantively unconscionable." (Doc. 26 at 1, emphasis omitted.) Meanwhile, Defendant identifies various reasons why Plaintiff's request for judgment on the pleadings is procedurally improper and also argues that, on the merits, the challenged provisions are not illusory or otherwise invalid. (Doc. 31 at 4-8, 13-17.)

Plaintiff is not entitled to the declaratory relief sought in Count Three. As an initial matter, the Court questions whether this is even an appropriate situation in which to consider a standalone request for declaratory relief. As noted, Defendant has proffered three justifications for refusing to pay the $528,944.95 commission to Plaintiff. The first justification—that the Diaceutics deal was not an eligible sale because it constituted a "Real World Data partner deal" and thus fell outside Plaintiff's territory—has nothing to do with Defendant's discretionary power to reduce or refuse to pay commissions under the "Achievement above Target" and "Exceptional Orders" sections of the Incentive Plan. (Doc. 32 at 8 ["Plaintiff acknowledges that Defendant disputes whether the commission at issue here is a qualifying sale . . . ."].) Thus, even if the Court were to declare those provisions void and strike them, Defendant could still prevail. It follows that Plaintiff is effectively seeking a preemptive declaration about the validity of those two contractual provisions, even though the requested declaration may not have any effect on his bottom-line right to recovery. Federal courts need not issue declaratory relief in this scenario. *See, e.g., Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (a district court need not issue a declaratory judgment if it "would not resolve the entire case or controversy as to any [plaintiff] but would merely determine a collateral legal issue governing certain aspects of their pending or future suits"); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) ("This determination is discretionary, for the Declaratory Judgment Act is

deliberately cast in terms of permissive, rather than mandatory, authority. The Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.") (cleaned up); *Aetna Cas. & Sur. Co. v. PPG Indus., Inc.*, 554 F. Supp. 290, 296 (D. Ariz. 1983) ("Declaratory judgment actions may not be based upon future controversies that may never arise.").

In a related vein, the validity of the "Achievement above Target" and "Exceptional Orders" sections of the Incentive Plan is intertwined with the merits of Plaintiff's claims for recovery against Defendant in Counts One and Two of the complaint. *Cf. Schultz v. BAC Home Loans Servicing, LP*, 2011 WL 3684481, *4 (D. Ariz. 2011) ("To the extent that the Plaintiff's complaint seeks to raise an independent cause of action for declaratory relief [to resolve the construction or validity of a written contract], that claim also fails. Declaratory relief is a remedy for underlying causes of action . . . not a separate cause of action. Because Plaintiff has not sufficiently pled a breach of contract claim, she is not entitled to a declaratory judgment regarding the meaning and enforcement of the note and deed of trust."). Some of the discretionary factors to consider when deciding whether to issue declaratory relief include the need to "avoid needless determination of state law issues"; "whether the declaratory action will settle all aspects of the controversy"; "whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue"; and "whether the declaratory action is being sought merely for the purposes of procedural fencing." *Dizol*, 133 F.3d at 1225 & n.5 (cleaned up). Those considerations counsel against issuing independent declaratory relief as to the narrow issues raised in Count Three.

Nevertheless, even assuming it is appropriate to reach the merits of Count Three, the Court agrees with Defendant that the challenged provisions are not illusory, void, or substantively unconscionable. The parties' arguments as to this issue are as follows. Plaintiff argues that "the Incentive Plan purports to allow Clarivate to alter the terms of Mr. Staren's commission payments on a commission-by-commission [basis] at any time and for any reason. The Incentive Plan does not limit Clarivate to only those commissions which have not been earned or to those commissions above a certain dollar threshold. In

1   fact, it does not limit Clarivate in any way at all." (Doc. 26 at 6.) According to Plaintiff,
2   this "is precisely what Williston identifies as prohibited, illusory promise-making:
3   Clarivate can 'decide later the nature or extent of [its] performance.'" (*Id.*) To support his
4   arguments, Plaintiff cites *Powanda v. Inteplast Group, Ltd.*, 2015 WL 1525737 (D. Conn.
5   2015). (*Id.* at 5.) Plaintiff also seeks to distinguish *Allen D. Shadron, Inc. v. Cole*, 416
6   P.2d 555 (Ariz. 1966). (*Id.* at 7-8).

7         Defendant responds that Plaintiff "fails to cite to a single case interpreting Arizona
8   law in which a Court has declared that the individual discretionary provisions of a
9   commission agreement shall be struck or 'blue penciled' individually as 'illusory' or 'void'
10  in favor of the rest of the contract remaining enforceable." (Doc. 31 at 13, emphases
11  omitted.) According to Defendant, "Plaintiff's request to invalidate individual
12  discretionary provisions of the Incentive Plan is contrary to the law, and instead, if
13  Plaintiff's claims are allowed to proceed at all, this Court must not strike individual
14  provisions but should hold Clarivate to the standard that it must act with sound judgment
15  in applying its discretion under the Incentive Plan." (*Id.* at 14.) Defendant cites several
16  Arizona cases, including *Cole*, in support of this proposition. (*Id.* at 13-14.)

17        Plaintiff replies that "Arizona courts routinely and consistently apply severability
18  provisions to strike offending terms and enforce the remainder of the contract." (Doc. 32
19  at 1.) Plaintiff also argues that Arizona courts are particularly inclined to sever offending
20  provisions and enforce the rest where, as here, the contract itself provides for severability.
21  (*Id.* at 3.)

22        Under Arizona law, which both sides agree is applicable here, "an illusory contract
23  is unenforceable for lack of mutuality." *Shattuck v. Precision-Toyota, Inc.*, 566 P.2d 1332,
24  1334 (Ariz. 1977). However, Arizona courts have rejected the notion that a contractual
25  provision that grants one party "sole and absolute discretion . . . whether to perform"
26  necessarily "mak[es] its promise illusory," holding instead that a "satisfaction clause . . .
27  of the subjective type" still requires the party "deciding whether to exercise its approval or
28  disapproval . . . to do so in good faith"—and, thus, such a promise is "not illusory."

- 10 -

*Horizon Corp. v. Westcor, Inc.*, 688 P.2d 1021, 1026-27 (Ariz. Ct. App. 1984).

Arizona courts have also applied this principle in the sales-commission context. For example, in *Cole*, the Arizona Supreme Court held that a contract that provided for automatic employee commission payments for sales under $75,000 but gave the employer discretion whether to pay commissions for sales over $75,000 was not illusory. *Cole*, 416 P.2d at 556-57. In reaching this conclusion, the court rejected the argument that "the word 'discretion' gives an unlimited free choice," explaining that "[w]hile the power of decision was left entirely with Shadron . . . this does not mean there is an unlimited power to choose arbitrarily. Discretion is the freedom to act according to one's judgment. The use of the word 'discretion' required Shadron to act on sound judgment since it excludes arbitrary, unreasonable or oppressive acts. By the use of the word 'discretion', Shadron was permitted to act without control but it could not exercise arbitrary or capricious judgment or abuse its power. While a court would not control the exercise of Shadron's discretion, it would require the exercise of that discretion." *Id.* at 557. Similarly, in *Marciniak v. Veritas Techs., Inc.*, 2021 WL 1627250 (D. Ariz. 2021), the court held that a contract with provisions that granted an employer the power "to modify all aspects of the [commission payment plan]" was not illusory. *Id.* at *4. Emphasizing that "interpretations which render contracts void are highly disfavored in Arizona law," the court concluded that, for various reasons, "the plan does not afford unfettered discretion as Defendant argues." *Id.*

Although Plaintiff seeks to distinguish *Cole* and *Marciniak* by identifying various factual differences between those cases and this one, the differences identified by Plaintiff are immaterial. If anything, the provisions at issue here place more express limitations on Defendant's exercise of its discretion than the challenged provisions in *Cole* and *Marciniak*. For example, in the "Achievement above Target" section, Defendant is only authorized to limit commission payments in "rare scenarios where achievement is misaligned to the target that was set for a territory." (Doc. 1-3 at 19.) Similarly, in the "Exceptional Orders" section, Defendant's discretionary power to limit commission payments only applies to "[e]xceptionally large single orders that create payouts greater

than 50% of a Plan component OTC in any one pay period." (*Id.* at 20.) The presence of these express limitations on Defendant's exercise of its discretion negates any claim under Arizona law that they create illusory obligations. *Cf. Marciniak*, 2021 WL 1627250 at *4 ("In light of Arizona's disfavor of interpretations which render a contract void, Arizona's previous affirmation of the validity of a commission agreement modified by a discretionary clause, and the limitations of the exercise of discretion present in the Plan, . . . [t]he discretion afforded the company does not render the contract illusory.").

The Court acknowledges that the second half of the "Exceptional Orders" section is more broadly written than the provisions discussed above. It provides: "Additionally, Clarivate Management reserves the right, in its sole discretion, to designate any account or sales opportunity as a 'Redlined Account' at any point during the Plan Period, to which a Participant's normal incentive compensation terms will not apply. *This may be done, for example, in the event of a merger or acquisition, in the event of exceptional contractual/ payment terms, or in the case of any unexpectedly large sales opportunity*. The Company will notify the Participant either in advance or retroactively, if a given account or sales opportunity is designated as a Redline Account. Incentive compensation payments, if any, on Redline Accounts are purely discretionary within Clarivate, and will be determined by Clarivate Management, in its sole discretion." (Doc. 1-3 at 20, emphasis added.) Nevertheless, this provision is not illusory under *Cole*. As an initial matter, the italicized text of this provision provides concrete examples of when a particular sales opportunity may permissibly be deemed a "Redlined Account." Although Plaintiff may be correct that the use of "for example" suggests a non-exhaustive list, that does not mean the contract provides boundless discretion. At most, it would mean that only similar reasons would justify the exercise of discretion. *Cf. United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1115 (D.C. Cir. 2009) ("Contrary to Defendants' argument, nothing about this interpretation renders the definition of 'enterprise' devoid of meaning. Although encompassing non-enumerated enterprises, section 1961(4)'s list defines 'enterprise,' in part, by listing the *kinds* of entities Congress had in mind. Indeed, the Supreme Court has

acknowledged this meaning by requiring enterprises to exhibit common purpose, organization, and continuity."). At any rate, under Arizona law, even when a contractual clause purports to vest one party with subjective discretion about whether to perform, that party still may not engage in an "arbitrary or capricious judgment or abuse its power." *Cole*, 416 P.2d at 557. *See also Horizon Corp.*, 688 P.2d at 1027 (a "satisfaction clause . . . of the subjective type" is "not illusory" because it requires the party "deciding whether to exercise its approval or disapproval . . . to do so in good faith").

*Powanda* does not compel a different result. Most important, *Powanda* appeared to apply Connecticut law, rather than Arizona law, when analyzing whether the "Defendant's interpretation permitting retroactive reductions of commissions already earned would essentially render the contract illusory." *Powanda*, 2015 WL 1525737 at *3. There is no need to look to Connecticut law for guidance here, particularly where Arizona courts (and courts applying Arizona law) have already analyzed similar contractual provisions. *Powanda* is also factually distinguishable because that contract at issue there did not place express limitations on, or otherwise identify illustrative guideposts concerning, the circumstances in which the defendant could exercise its discretion to reduce a commission. *Id.* ("Appendix C to the Employment Agreement outlined Mr. Powanda's salary and commission payments of 2% in Northeast region and provided that it 'may be modified by the Company, at the sole discretion of the Company, at any time in writing, dated and signed by the Company, and promptly forwarded to the Key Account Sales Manager.'").

For similar reasons, there is no merit to Plaintiff's contention that the challenged provisions are substantively unconscionable. Under Arizona law, "a claim of unconscionability can be established with a showing of substantive unconscionability alone." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 59 (Ariz. 1995). "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* at 58. *See also Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013) ("A contract may be substantively

unconscionable when the terms of the contract are so one-sided as to be overly oppressive or unduly harsh to one of the parties."). Substantive unconscionability "requires a more stringent test than mere unfairness." *Meek v. Meek*, 539 P.3d 920, 928 (Ariz. Ct. App. 2023) (cleaned up). "Courts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain." *Nelson v. Rice*, 12 P.3d 238, 243 (Ariz. Ct. App. 2000) (cleaned up).

Applying these standards, the Incentive Plan is not substantively unconscionable. Plaintiff fails to cite a single case deeming a discretionary commission provision unconscionable under Arizona law or even one supporting the possibility of that outcome. Plaintiff cites only *McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142 (N.D. Cal. 2002), a case from outside Arizona, and *McCollum* is also factually distinguishable. Although Plaintiff contends that the provisions at issue here, as in *McCollum*, give Defendant the power to "revoke any commission . . . for any reason and for any amount" (Doc. 32 at 13), that argument lacks merit for the reasons discussed in earlier portions of this order. To reiterate, the discretion created by the challenged provisions in the Incentive Plan is limited by various textual guardrails as well as by the requirement, recognized in *Cole* and *Horizon Corp.* and applied in *Marciniak*, that even textually unbounded grants of discretion be exercised in a good-faith, non-arbitrary, and non-oppressive manner.

This outcome is consistent with *Nickerson v. Green Valley Recreation, Inc.*, 265 P.3d 1108 (Ariz. Ct. App. 2011), which Defendant cites in its motion papers. In *Nickerson*, the court rejected a substantive-unconscionability challenge to an HOA contract that seemed to give the HOA sole discretion to modify the terms of the agreement, holding that other provisions within the contract—as well as principles of corporation law more generally—meant that the HOA did "not have the unfettered ability to modify the rights of the parties." *Id.* at 1119. Here, too, various textual qualifiers and underlying principles of Arizona law mean that Defendant lacks total, unfettered discretion under the provisions at issue. This, in turn, means the challenged provisions do not satisfy Arizona's exacting

standard for substantive unconscionability.[2]

B.     **Counts One And Two**

Defendant also seeks judgment on the pleadings on Counts One and Two. Defendant's overarching argument is that because Plaintiff has taken the position that the Incentive Plan is invalid, it follows that Plaintiff cannot prevail on a claim under the AWA or for breach of the implied covenant of good faith and fair dealing, as both claims must be premised on a valid contract.  (Doc. 31 at 9 ["[G]iven the allegations in the Complaint and the admissions in Plaintiff's recent Motion, the Complaint fails to state cognizable claims for relief to support the Arizona Wage and Breach of Covenant Claims, both of which necessarily rely upon the existence of an enforceable agreement under the law."].) In response, Plaintiff clarifies that although some of his previous assertions may be imprecise, he is not taking the position that the Incentive Plan itself is invalid—rather, he is simply seeking to sever the "Achievement above Target" and "Exceptional Orders" sections of that contract.  (Doc. 32 at 4 ["Defendant appears to base its entire argument on (admittedly) inartful pleadings and arguments that, when viewed in isolation from the remainder of the pleading/motion in which they are found, appear to argue that the entire Incentive Plan is void."]; *id.* at 6 ["Defendant's focus on that portion of the brief, to the exclusion of the rest of the brief and the Complaint, reveals the folly of Defendant's position, as shown by the unmistakable relief Plaintiff seeks—to strike the two provisions at issue . . . ."]; *id.* at 8-9 ["The two provisions at issue . . . are unlawful as they are illusory and/or substantively unconscionable.  But their inclusion in the Incentive Plan, while problematic, does not doom the entire Incentive Plan nor the lawful promise between Plaintiff and Defendant for commissions owed for qualifying sales . . . ."].)  In reply, Defendant argues that "Plaintiff's allegations are not taken out of context, as he asserts in his Response" because "quotations from the allegations in . . . Plaintiff's Complaint" show that Plaintiff is seeking to invalidate the Incentive Plan in its entirety, "and this is the

---

[2]     Because the challenged provisions are not illusory or substantively unconscionable, it is unnecessary to resolve the parties' arguments regarding the severability of those provisions.

- 15 -

Declaratory Relief he is seeking in both the Complaint and in his Motion for Judgment on the Pleadings." (Doc. 35 at 2.)

Although certain portions of the complaint can be read, in isolation, as suggesting that Plaintiff's theory is that the Incentive Plan itself is invalid and unenforceable—"The provisions of the Incentive Sales Plan relied on by Clarivate, including those set forth expressly in Paragraph 28 of this Complaint [*i.e.*, the 'Achievement Above Target' and 'Exceptional Orders' sections], which allow Clarivate to unilaterally and in its sole discretion and authority reduce or eliminate commissions that are otherwise owed *renders the commission payment agreement* with Mr. Staren as illusory" (Doc. 14 ¶ 52, emphasis added)—other portions of the complaint are consistent with the position Plaintiff takes in his motion papers, which is that he simply seeks to sever the challenged provisions of the Incentive Plan. (*See, e.g., id.* ¶ 53, emphasis added ["Mr. Staren is entitled to a judicial declaration that Clarivate's *contractual provisions* which authorize it to unilaterally reduce and/or revoke Mr. Staren's commissions are illusory and void."].) Plaintiff also makes clear in the complaint that he seeks to rely on the Incentive Plan as the contract giving rise to his AWA and implied-covenant claims. (*Id.* ¶ 36 [AWA claim: "Under the terms of Mr. Staren's commission schedule, Mr. Staren is owed the following commission for the Diaceutics sale: . . . $528,944.95."]; *id.* ¶ 41 [implied-covenant claim, alleging that "[e]very contract, including employment contracts, contains the implied covenant of good faith and fair dealing"].) Under these circumstances, the Court cannot conclude that Plaintiff has pleaded himself out of asserting any contract-based claim.

Defendant's remaining argument in relation to Counts One and Two is that because Plaintiff has taken the position that the challenged provisions of the Incentive Plan vest Defendant with unfettered discretion in deciding whether to pay commissions, it follows that Plaintiff could not have harbored a "reasonable expectation" of payment, as required under the AWA (Doc. 31 at 10-11) and to support an implied-covenant claim (*id.* at 12-13). This "gotcha" argument fails because, as discussed in Part II.A above, Defendant has now prevailed on its argument that the challenged provisions of the Inventive Plan do not

vest Defendant with unfettered discretion. Indeed, in making that argument, Defendant conceded that "if Plaintiff's claims are allowed to proceed at all, this Court must not strike individual provisions but should hold Clarivate to the standard that it must act with sound judgment in applying its discretion under the Incentive Plan." (Doc. 31 at 14.) Plaintiff has plausibly alleged why he had a reasonable expectation of payment under the provisions at issue, such that dismissal at the pleading stage is not warranted.

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motion for partial judgment on the pleadings (Doc. 26) is **denied**.
2. Defendant's cross-motion for judgment on the pleadings (Doc. 31) is **granted in part and denied in part**.

Dated this 6th day of January, 2025.

Dominic W. Lanza
United States District Judge